```
                                FILED
                        CLERK, U.S. DISTRICT COURT

                              10/09/2024

                        CENTRAL DISTRICT OF CALIFORNIA
                        BY: _____AP_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>LISA PUENTE and<br>ARTHUR MARQUEZ,<br><br>　　　　Defendants. | ED CR No. 5:24-cr-00245-KK<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1029(a)(2): Use of Unauthorized Access Devices; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. §§ 982 and 1029: Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. §§ 1341, 2(a), 2(b)]

[ALL DEFENDANTS]

A.　　INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.　　California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefits program for the State of California.

2. On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020. The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

3. Before the enactment of the CARES Act, to be eligible for UI benefits administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

4. The CARES Act established a new program — Pandemic Unemployment Assistance ("PUA") — to provide UI benefits during the COVID-19 pandemic to people who did not qualify for regular UI benefits, including business owners, self-employed workers, independent contractors, and those with a limited work history, who were out of business or had significantly reduced their services as a direct result of the pandemic. UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

5. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits if he/she previously performed such work in California and was unemployed, partially

unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

6. Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications. Claimants reported their total income for the 2019 calendar year on the application. The stated income was used to calculate the benefits to be paid, which were at least $167 per week.

7. A PUA benefits claimant was required to answer various questions on his/her application to establish his/her eligibility for the benefits. The claimant was required to provide his/her name, Social Security Number, and mailing address. The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

8. After it accepted an application for UI benefits, including an application submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses. The EBP debit card was mailed via the United States Postal Service from BofA to the claimant at the address the claimant provided as his/her mailing address on his/her UI benefits application.

B. THE SCHEME TO DEFRAUD

9. Beginning no later than February 2020 and continuing through at least August 2023, in San Bernardino County, Riverside County, and Los Angeles County, within the Central District of California, and elsewhere, defendants LISA PUENTE and ARTHUR MARQUEZ, together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with the intent to defraud,

3

devised, participated in, and executed a scheme to defraud EDD and the United States Treasury as to material matters, and to obtain money and property from EDD and the United States Treasury, namely, UI benefits and PUA benefits, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

10. The fraudulent scheme operated, in substance, as follows:

   a. Defendants PUENTE and MARQUEZ and their co-schemers filed and caused to be filed with EDD fraudulent applications for UI benefits in the names of other persons, including, but not limited to (1) persons who did not qualify for UI benefits, whether because they were incarcerated in California state prisons, or for another reason, and (2) persons whose personal identifying information was used without their permission.

   b. With respect to applications in the names of persons incarcerated in California state prisons and persons whose personal identifying information was used without their permission, defendants PUENTE and MARQUEZ and their co-schemers falsely stated and represented, and caused to be falsely stated and represented, on the UI benefits applications that were filed with EDD that the named claimants were individuals whose employment had been negatively affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the PUA provision of the CARES Act.

   c. With respect to applications in the names of persons incarcerated in California state prisons and persons whose personal identifying information was used without their permission, defendants PUENTE and MARQUEZ and their co-schemers falsely stated and represented, and caused to be falsely stated and represented, on the

4

UI benefits applications that were filed with EDD that the named claimants resided and had worked in the State of California, including in San Bernardino County, within the Central District of California.

    d. With respect to applications in the names of persons incarcerated in California state prisons, by falsely stating that the named straw claimants had worked in the State of California, defendants PUENTE and MARQUEZ and their co-schemers falsely represented and caused to be falsely represented that the named straw claimants were eligible for UI benefits administered by EDD when, as defendants PUENTE and MARQUEZ then knew, they were not eligible for such benefits.

    e. With respect to applications in the names of victims (i.e., persons whose personal identifying information was used without their permission), defendants PUENTE and MARQUEZ and their co-schemers falsely represented that the victim applicants qualified for EDD administered benefits, because they lived in California, when in fact, most such victims did not.

    f. The fraudulent EDD applications would generally:

      i. falsely state claimants' prior annual income by asserting an annual income of at least $4,200 for all claimants regardless of their actual income;

      ii. falsely state that the named claimants were "Unemployed Self-employed Individual[s]" whose employment was negatively affected because their "place of employment is closed as a direct result of the COVID-19 public health emergency," when in fact, the claimants had not worked in their listed place of employment, nor

had their employment status been altered by the closure of their place of employment; and

   iii. falsely state claimants' mailing addresses by replacing claimants' true mailing addresses with mailing addresses associated with locations chosen and controlled by defendants PUENTE and MARQUEZ.

g. As a result of the fraudulent UI benefits applications that defendants PUENTE and MARQUEZ and their co-schemers filed and caused to be filed, EDD authorized BofA to issue EBP debit cards in the names of dozens of victims and straw claimants.

h. To ensure that they received the UI benefits that were paid as a result of the fraudulent applications, defendants PUENTE and MARQUEZ and their co-schemers listed and caused to be listed on the applications for the UI benefits addresses to which they had access as the mailing addresses for each of the straw claimants and victims. Defendants PUENTE and MARQUEZ knew that, by doing so, defendants PUENTE and MARQUEZ and their co-schemers would cause BofA to mail the EBP debit cards issued in the names of victims and straw claimants to these addresses, thereby enabling defendants PUENTE and MARQUEZ and their co-schemers to take possession of the EBP debit cards.

i. After defendants PUENTE and MARQUEZ received the EBP debit cards issued as a result of the fraudulent UI benefits applications that they and their co-schemers submitted to EDD, defendants PUENTE and MARQUEZ and other co-schemers used the debit cards and caused the debit cards to be used to withdraw the UI benefits loaded onto the debit cards by making cash withdrawals at

Automated Teller Machines and at banking centers, as well as by using the debit cards via point of sale devices in different businesses.

11. Through this scheme, defendants PUENTE and MARQUEZ and their co-schemers caused at least approximately 124 fraudulent applications for PUA benefits to be filed with EDD resulting in losses to EDD and the United States Treasury of approximately $2,136,768.

C.  **USE OF THE MAILS**

12. On or about the dates set forth below, in San Bernardino County, within the Central District of California, and elsewhere, defendants PUENTE and MARQUEZ, together with others known and unknown, each aiding and abetting the other, for the purpose of executing the above-described scheme to defraud, knowingly caused the following items to be delivered by the United States Postal Service according to the directions thereon:

| COUNT | DATE | DEFENDANT(S) | ITEM MAILED |
|---|---|---|---|
| ONE | June 24, 2020 | PUENTE, MARQUEZ | EBP debit card for an account in the name of Straw Claimant 1 ending in 6850 sent by U.S. Mail from BofA to 1065 N Sierra Way, San Bernardino, CA 92410 |
| TWO | July 9, 2020 | PUENTE, MARQUEZ | EBP debit card for an account in the name of Straw Claimant 2 ending in 5769 sent by U.S. Mail from BofA to 1333 Massachusetts Ave., Apt. 204, Riverside, CA 92507 |
| THREE | June 30, 2020 | PUENTE, MARQUEZ | EBP debit card for an account in the name of inmate Straw Claimant 3 ending in 8430 sent by U.S. Mail from BofA to 4031 La Rica Ave., Apt. F, Baldwin Park, CA 91706 |

| COUNT | DATE | DEFENDANT(S) | ITEM MAILED |
|---|---|---|---|
| FOUR | July 24, 2020 | PUENTE | EBP debit card for an account in the name of Victim 1 ending in 0891 sent by U.S. Mail from BofA to 360 S. Mount Vernon Ave., San Bernardino, CA 92410 |
| FIVE | July 29, 2020 | PUENTE | EBP debit card for an account in the name of Victim 2 ending in 3908 sent by U.S. Mail from BofA to 2690 Flores St., San Bernardino, CA 92407 |
| SIX | July 1, 2020 | MARQUEZ | EBP debit card for an account in the name of Victim 3 ending in 7149 sent by U.S. Mail from BofA to 1930 W. College Ave., Apt. 139, San Bernardino, CA 92407 |

COUNT SEVEN

[18 U.S.C. § 1029(a)(2)]

[ALL DEFENDANTS]

1. The Grand Jury realleges paragraphs 1 through 10 of this Indictment here.

2. Beginning on or about June 1, 2020, and continuing through on or about August 7, 2021, in San Bernardino County, within the Central District of California, and elsewhere, defendants LISA PUENTE and ARTHUR MARQUEZ, each aiding and abetting the other, in transactions affecting interstate and foreign commerce, knowingly and with intent to defraud, used unauthorized access devices, as defined in Title 18, United States Code, Sections 1029(e)(1) and (3), specifically, the following debit card account numbers issued in the names of the persons identified below, which debit card account numbers were obtained with intent to defraud, and by such conduct obtained things of value, their value together totaling $1,000 or more, during a one-year period:

| UNAUTHORIZED ACCESS DEVICE | ISSUED TO |
|---|---|
| BofA account number ending in 6850 | Straw Claimant 1 |
| BofA account number ending in 5769 | Straw Claimant 2 |
| BofA account number ending in 8430 | Straw Claimant 3 |

COUNT EIGHT

[18 U.S.C. § 1028A(a)(1)]

[DEFENDANT PUENTE]

On or about July 22, 2020, in San Bernardino County, within the Central District of California, and elsewhere, defendant LISA PUENTE knowingly used, without lawful authority, means of identification that defendant PUENTE knew belonged to another person, that is, the name and Social Security Number of Victim 1, during and in relation to the offense of Mail Fraud, a felony violation of Title 18, United States Code, Section 1341, as charged in Count Four of this Indictment.

COUNT NINE

[18 U.S.C. §§ 1028A(a)(1), 2(a), 2(b)]

[DEFENDANT MARQUEZ]

On or about June 30, 2020, in San Bernardino County, within the Central District of California, and elsewhere, defendant ARTHUR MARQUEZ, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly used, and willfully caused to be used, without lawful authority, means of identification that defendant MARQUEZ knew belonged to another person, that is, the name and Social Security Number of Victim 3, during and in relation to the commission of the offense of Mail Fraud, a felony violation of Title 18, United States Code, Section 1341, as charged in Count Six of this Indictment.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Six, Eight and Nine of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1029]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2) and 1029, in the event of any defendant's conviction of the offense set forth in Count Seven of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)   Any personal property used or intended to be used to commit the offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office

MITCHELL M. SULIMAN
Assistant United States Attorney
Riverside Branch Office